IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JENNIFER L. PATRICK, ) | |
| ) | Case No.21CV00540 |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| USAA FEDERAL SAVINGS BANK, and ) | |
| EQUIFAX, INC. ) | |
| ) | |
| Defendants. ) | |

## <u>VERIFIED COMPLAINT</u>

Now comes the Plaintiff, Jennifer L. Patrick (the "Plaintiff"), complaining of the acts of the Defendants, USAA Federal Savings Bank ("USAA") and Equifax, Inc. ("Equifax") (collectively, "Defendants"), and respectfully alleges as follows:

## I.     INTRODUCTION

1.     This is an action for actual and punitive damages, including attorney's fees, filed by the Plaintiff for failure of the Defendants to comply with applicable provisions of Title 15 of the United States Code.

2.     In addition, or in the alternative, this action is also filed for actual and punitive damages, including statutory damages and attorney's fees, filed by the Plaintiff for the failure of Defendants to comply with applicable North Carolina law.

3.     This action is also brought by a consumer for Defendants' violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA") and the North Carolina Debt Collection Act, N.C. GEN. STAT. §§ 75-50, *et seq*. ("NCDCA").

4.     Specifically, Plaintiff seeks remedies as provided in the FCRA for Defendants' failure to comply with Sections 1681e(b), 1681i, and 1681s-2(b) of the FCRA and as provided in the NCDCA for Defendants' failure to comply with Section 75-54 of the NCDCA.

## II.     JURISDICTION

5.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1367.

## III.     PARTIES and BACKGROUND INFORMATION

### A. Plaintiff

6. The Plaintiff is a resident of Stanly County, North Carolina.

7. Plaintiff is employed by the Federal Bureau of Investigation ("FBI") as an Investigative Specialist.

8. As a requirement of her employment and security clearance, Plaintiff is subjected to continuous scrutiny of her financial situation including but not limited to her credit score.

9. Plaintiff's employment with the FBI is conditioned upon her maintenance of a healthy financial condition including but not limited to avoiding defaults on her debts.

### B. Defendants

#### 1. USAA

10. Defendant USAA is a financial services group of companies organized under the laws of the State of Texas with its principal office in San Antonio, Texas.

11. Defendant USAA provides insurance, lending, investment, and retirement services and products to its customers who are past and present members of the Armed Forces and their families.

12. Defendant USAA is a "person" as the term is defined in 15 U.S.C. § 1681a(b).

13. Upon information and belief, USAA is a creditor of the Plaintiff.

14. Upon information and belief, USAA furnishes information about its consumers to consumer reporting agencies.

15. Upon information and belief, USAA is a furnisher of information with respect to being Plaintiff's creditor under the FCRA.

16. Defendant USAA, itself, and through its agents, collects and furnishes data about its consumers to Equifax for the purpose of including such data in each consumer's credit report.

17. USAA's employees, affiliates, directors, agents and attorneys act under the direction and supervision of USAA and, therefore, USAA is directly and/or vicariously liable for the actions of its employees, affiliates, directors, agents and attorney under, *inter alia,* the theory of *respondeat superior*.

18. Upon information and belief, Defendant USAA is a "debt collector" as defined by the NCDCA, N.C. GEN. STAT. § 75-50(3).

#### 2. Equifax

19. Defendant Equifax is a corporation organized under the laws of the State of Georgia with its principal office in Atlanta, Georgia.

20. Defendant Equifax is a consumer credit reporting agency that collects and aggregates information on individual consumers and publishes credit reports to third parties.

21. Equifax is a "consumer reporting agency" as the term is defined in 15 U.S.C. § 1681a(f).

22. Equifax is a "person" as the term is defined in 15 U.S.C. § 1681a(b).

23. Equifax's employees, affiliates, directors, agents and attorneys act under the direction and supervision of Equifax and, therefore, Equifax is directly and/or vicariously liable for the actions of its employees, affiliates, directors, agents and attorney under, *inter alia,* the theory of *respondeat superior*.

## IV. FACTS

### A. Plaintiff's Payment History for the Loans

24. Plaintiff and her spouse, Scott Patrick ("Spouse"), purchased a recreational vehicle ("RV") on or about April 2015.

25. Plaintiff and Spouse executed a promissory note dated April 8, 2015 04/08 with USAA (the "RV Note" or "Secured Note") in the original amount of $65,000.00. A summary of the Consumer Loan Account for the RV Note is attached hereto and incorporated herein as "Exhibit A."

26. The RV served as collateral for the Secured Note.

27. The Secured Note and any subsequent transfers and modifications thereof will be collectively referred to as the "RV Loan" and/or the "Secured Loan" herein.

28. Plaintiff and Spouse executed a promissory note dated July 22, 2019 between Plaintiff and Spouse as joint debtors and USAA (the "Unsecured Note") granting a line of credit, with an interest rate of 13.89%. A summary of the Consumer Loan Account for the Unsecured Note is attached hereto and incorporated herein as "Exhibit B."

29. The Unsecured Note and any subsequent transfers and modifications thereof will be collectively referred to as the "Line of Credit."

30. In June 2020, USAA reported the balance of the Line of Credit as $28,509.00 to Equifax.

31. In June 2020, Equifax reported the Line of Credit balance of $28,509.00 on Plaintiff's credit report ("Credit Report").

32. The Line of Credit and the RV Loan and any subsequent transfers and modifications thereof will be collectively referred to as the "Loans."

33. Plaintiff's Spouse filed a petition for Chapter 7 Bankruptcy on May 1, 2020 (the "Bankruptcy Case").

3

34. Plaintiff has never filed for bankruptcy relief.

35. In the Bankruptcy Case, Spouse listed both Loans as debts he owed to USAA and listed Plaintiff as a co-debtor on both Loans.

36. Spouse's Bankruptcy filing had no effect on the Loans as to Plaintiff.

37. Plaintiff owed the Loans before the Bankruptcy Case.

38. Plaintiff owed the Loans during the Bankruptcy Case.

39. Plaintiff owed the Loans after the Bankruptcy Case was closed.

40. Plaintiff has made full, timely monthly payments on the Loans.

41. Since the Loans' inceptions, Plaintiff never missed a payment or made a payment after its due date without prior permission of USAA.

42. Plaintiff and Spouse are both "consumers" as defined by FCRA, 15 U.S.C. § 1681a(c).

43. The Loans are debts that reflect on Plaintiff's credit worthiness, credit standing, credit capacity, and general reputation.

44. Plaintiff's Equifax Credit Report communicates information about Plaintiff's payment history on the Loans.

45. Plaintiff's Credit Report is a written, oral, or other communication of information by a consumer reporting agency.

46. Plaintiff's Credit Report is a "consumer report" as defined by the FCRA, 15 U.S.C. § 1681a(d).

**B.     USAA Reports the Loans as "Charged Off"**

47. After Spouse filed the Bankruptcy Case, the Loans did not appear on Plaintiff's USAA Banking Profile.

48. On or about June 2020, Plaintiff called USAA customer service ("Initial Phone Call") to discuss the absence of the Loans on her Banking Profile.

49. During this phone call, USAA customer service representative informed Plaintiff that the Loans had been moved to the USAA Bankruptcy Department because a holder had filed bankruptcy.

50. During this phone call, the USAA customer service representative assured Plaintiff that she was recognized as a "non-filer" in their records, meaning that she did not file a bankruptcy case.

51. On more than one occasion during the pendency of the Bankruptcy Case, from approximately June to August, 2020, Plaintiff called USAA ("Summer Phone Calls") to ensure

they were aware that she was making and would continue to make all scheduled payments on the Loans.

52. During the Summer Phone Calls, USAA customer service representatives continued to assure Plaintiff that she appeared as a "non-filer" in their records.

53. During the Summer Phone Calls, USAA customer service representatives recommended that Plaintiff set up payments for the Loans as "outside bills" in the USAA Bill Pay system.

54. In late June 2020, Plaintiff followed this advice and set up the Loans as "outside bills" on the USAA Bill Pay system.

55. Since said date, Plaintiff has continued to pay all scheduled payments on the Loans in full through the USAA Bill Pay system as "outside bills."

56. Plaintiff has timely paid every installment payment due under the Loans unless otherwise agreed upon by USAA.

57. On or about August 2020, Plaintiff applied for and was approved for a mortgage loan from Southern Trust ("Lender") to purchase a new home.

58. On the day before the scheduled closing date on the new home purchase, the Lender notified Plaintiff that USAA had reported the Loans as "charged off" on her Equifax credit report and, as a result, Plaintiff's credit score from Equifax had dropped precipitously.

59. Plaintiff had a credit score of 659 on or about June 25, 2020. A copy of June credit report (the "June Credit report") is attached hereto and incorporated herein as "Exhibit C."

60. When the Loan was reported as "charged off" on or about August 1, 2020, Plaintiff's credit score dropped to 558. A copy of the August 31, 2020 Credit Report (the "August Credit Report") is attached hereto and incorporated herein by reference as "Exhibit D."

61. Because of the reduction in her credit score, the mortgage loan had to be submitted through the Lender's underwriting process again, which delayed the closing.

62. A "charge off" describes the treatment of a debt "as a loss or expense because payment is unlikely; to treat as a bad debt." *Charge Off*, BLACK'S LAW DICTIONARY (11th ed. 2019).

63. Under USAA's policies, loans are "charged off" when they reach a certain number of days past due, dependent upon the form of the loan. *See* USAA FED. SAV. BANK, PILLAR 3 REGULATORY CAPITAL DISCLOSURES (2020).

64. Under USAA's policies, "[g]enerally, when loans become 90 days past due, they are placed in nonaccrual status. . . . [c]redit card and home equity accounts are charged off on the last day of the month in which the loan becomes 180 days past due. . . . [c]onsumer loans are charged off when the account becomes 120 days past due." *Id.*

65.     Under USAA's policies, an unsecured bankrupt account is charged off after 50 days as to the bankruptcy debtor.  *Id.*

66.     Plaintiff never received a written warning or online notification that USAA intended to report the Loans as "charged off" to her credit reporting agencies.

67.     During the Initial Phone Call and Summer Phone Calls, USAA customer service representatives never informed Plaintiff that USAA intended to report the Loans as "charged off" to her credit reporting agencies.

68.     According to the loan payment history, payments on the Loans were current as of May 2020.  A copy of the loan payment history for August 2019 through August 2020 (the "Payment History") is attached hereto and incorporated herein by reference as "Exhibit E."

69.     According to the Plaintiff's monthly statements (collectively, "Monthly Statements") from USAA, Plaintiff continued to make full, timely monthly payments on the Loans from June 2020 through present.  A copy of a portion of each of the Monthly Statements showing payment to USAA are attached hereto and incorporated herein by reference as "Exhibit F."

70.     Pursuant to the Payment History and Monthly Statements, payments were made on the Secured Loan by Plaintiff between June 1, 2020 and September 3, 2021 as follows:

| Date Due | Amount Due | Date Paid | Amount Paid |
|---|---|---|---|
| June 2020 | $541.23 | 06/05/2020 | $541.23 |
| July 2020 | $541.23 | 07/03/2020 | $541.23 |
| August 2020 | $541.23 | 08/03/2020 | $541.23 |
| September 2020 | $541.23 | 09/01/2020 | $541.23 |
| October 2020 | $541.23 | 10/05/2020 | $541.23 |
| November 2020 | $541.23 | 11/04/2020 | $541.23 |
| December 2020 | $541.23 | 12/03/2020 | $541.23 |
| January 2021 | $541.23 | 01/05/2021 | $541.23 |
| February 2021 | $541.23 | 02/08/2021 | $541.23 |
| March 2021 | $541.23 | 03/05/2021 | $541.23 |
| April 2021 | $541.23 | 04/06/2021 | $541.23 |
| May 2021 | $541.23 | 05/04/2021 | $541.23 |
| June 2021 | $541.23 | 06/02/2021 | $541.23 |
| July 2021 | $541.23 | 06/30/2021 | $541.23 |
| August 2021 | $541.23 | 08/04/2021 | $541.23 |
| September 2021 | $541.23 | 09/03/2021 | $540.29 |

71.     Pursuant to the Payment History and Monthly Statements, payments were made on the Line of Credit by Plaintiff between June 1, 2020 and June 2, 2021 as follows:

| Date Due | Amount Due | Date Paid | Amount Paid |
|---|---|---|---|
| June 2020 | $561.35 | 06/05/2020 | $561.35 |

| | | | |
|---|---|---|---|
| July 2020 | $561.35 | 07/03/2020 | $561.35 |
| August 2020 | $561.35 | 08/03/2020 | $561.35 |
| September 2020 | $561.35 | 09/01/2020 | $561.35 |
| October 2020 | $561.35 | 10/05/2020 | $561.35 |
| November 2020 | $561.35 | 11/04/2020 | $561.35 |
| December 2020 | $561.35 | 12/03/2020 | $561.35 |
| January 2021 | $561.35 | 01/05/2021 | $561.35 |
| February 2021 | $561.35 | 02/08/2021 | $561.35 |
| March 2021 | $561.35 | 03/05/2021 | $561.35 |
| April 2021 | $561.35 | 04/06/2021 | $561.35 |
| May 2021 | $561.35 | 05/04/2021 | $561.35 |
| June 2021 | $561.35 | 06/02/2021 | $561.35 |
| July 2021 | $561.35 | 06/30/2021 | $561.35 |
| August 2021 | $561.35 | 08/04/2021 | $561.35 |
| September 2021 | $561.35 | 09/03/2021 | $561.35 |

### C. Plaintiff's First Dispute with Equifax and Response

72. On or about August 31, 2020, Plaintiff initiated a formal dispute (the "First Dispute") with Equifax about the misreporting of the Loans as "charged off."

73. In this dispute, Plaintiff specifically notified Equifax that USAA had reported the Loans as "charged off" even though she made full, timely payments.

74. On September 17, 2020, Equifax responded to Plaintiff's dispute (the "First Response"). A copy of the First Response is attached hereto and incorporated herein as "Exhibit G."

75. In the First Response, Equifax stated that it had verified the accuracy of the information with the furnisher, USAA, and updated their records in accordance with that investigation.

76. Despite the Plaintiff's demonstration to Equifax that all payments had been timely made on the Loans Equifax rejected her dispute and continued to report the Loans as "charged off" in the First Response.

77. In the First Response, Equifax produced an accounting of each of the Loans. The accounting of the Loans showed payments made as follows:

| Line of Credit | | | |
|---|---|---|---|
| Month | Payment Due (rounded to the nearest dollar) | Amount Paid (rounded to the nearest dollar) | Date of Last Payment |
| August 2020 | No Data Available | No Data Available | No Data Available |
| July 2020 | $561 | $561 | 06/1/2020 |
| June 2020 | $561 | $0 | 02/1/2020 |

| RV Loan | | | |
|---|---|---|---|
| Month | Payment Due (rounded to the nearest dollar) | Amount Paid (rounded to the nearest dollar) | Date of Last Payment |
| August 2020 | No Data Available | No Data Available | No Data Available |
| July 2020 | $541 | $541 | 06/1/2020 |
| June 2020 | $541 | $0 | 02/1/2020 |

78.     Each accounting in the First Response failed to recognize the Plaintiff's payments in June and August.

79.     Despite recognizing the Plaintiff's payment in July 2020 for each of the Loans, Equifax continued to report the Loans as "charged off" for the months of June, July, and August.

### D.     Plaintiff's Second Dispute with Equifax and Response

80.     On or about October 17, 2020, Plaintiff initiated a second formal dispute (the "Second Dispute") with Equifax about the misreporting of payments on the Credit Report for the months of June, July, and August.

81.     In this second dispute, Plaintiff specifically notified Equifax that USAA had incorrectly reported non-payment of the Loans on Plaintiff's Credit Report, despite the fact that she made full, timely payments. A copy of the portion of the credit report showing the inaccurately reported non-payments is attached hereto and incorporated herein as "Exhibit H."

82.     On October 31, 2020, Equifax responded to Plaintiff's dispute (the "Second Response"). A copy of the Second Response is attached hereto and incorporated herein as "Exhibit I."

83.     In the Second Response, Equifax stated that it had verified the accuracy of the information with the furnisher, USAA, and updated their records in accordance with that investigation.

84.     Despite the Plaintiff's demonstrated payment history, Equifax rejected her dispute and continued to report non-payment of the Loans on Plaintiff's Credit Report in the Second Response.

85.     In the Second Response, Equifax produced an accounting of each of the Loans. The accounting of the Loans showed payments made as follows:

| Line of Credit | | | |
|---|---|---|---|
| Month | Payment Due (rounded to the nearest dollar) | Amount Paid (rounded to the nearest dollar) | Date of Last Payment |
| September 2020 | $561 | $561 | 08/1/2020 |
| August 2020 | $561 | $0 | No Data Available |
| July 2020 | $561 | $561 | 06/1/2020 |

8

| June 2020 | $561 | $0 | 02/1/2020 |

| RV Loan | | | |
|---|---|---|---|
| Month | Payment Due (rounded to the nearest dollar) | Amount Paid (rounded to the nearest dollar) | Date of Last Payment |
| September 2020 | $541 | $541 | 08/1/2020 |
| August 2020 | $541 | $0 | No Data Available |
| July 2020 | $541 | $541 | 06/1/2020 |
| June 2020 | $541 | $0 | 02/1/2020 |

86.     Each accounting in the Second Response failed to recognize the Plaintiff's payments in June and August.

87.     Despite recognizing the Plaintiff's payment in July 2020 for each of the Loans, Equifax continued to report non-payment of the Loans on Plaintiff's Credit Report for the months of June, July, and August.

88.     In the Second Response, Equifax provided an identical loan payment history as recorded in the First Response.

### E.     Plaintiff's Car Loan

89.     On or about September 29, 2021, Plaintiff sought and was approved for a vehicle loan ("Car Loan") to obtain a new vehicle.

90.     Plaintiff and the Car Loan lender had agreed to a $1,000.00 down payment based on her credit history.

91.     After the Loans were reported as "charged off," Plaintiff's Car Loan lender required an additional $3,800.00 down payment from Plaintiff in order to make the loan.

**COUNT ONE**
**VIOLATION OF 15 U.S.C. § 1681e(b)**

92.     The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

93.     Equifax prepared Plaintiff's Credit Report subjecting it to the compliance procedures of 15 U.S.C. § 1681e.

94.     In preparing Plaintiff's Credit Report, Equifax was required to "follow reasonable procedures to assure maximum possible accuracy. . . ."  15 U.S.C. § 1681e(b).

95.     Plaintiff's Credit Report contained two major inaccuracies: it reported the Loans as "charged off" and had months where the Plaintiff allegedly did not make payments.

96. Although Spouse filed for bankruptcy protection and received a discharge of his personal obligation on the Loans, Plaintiff's obligation on the Loans remained.

97. Plaintiff was repeatedly assured by USAA agents that they were aware that she had not filed bankruptcy.

98. Lenders typically "charge off" a debt after 120-180 days of delinquency. *What is a Charge-Off?*, EQUIFAX, https://www.equifax.com/personal/education/credit/report/charge-offs-faq/ (last visited Mar. 1, 2021).

99. Equifax only discusses two possibilities where a debt is "charged off" while a debtor has continued to make payments: (A) failure to meet monthly minimums; or (B) filing bankruptcy. *Id.*

100. Plaintiff did not fail to make monthly payment minimums.

101. Plaintiff did not file bankruptcy.

102. Under USAA's policies, loans are "charged off" when they reach a certain number of days past due, dependent upon the form of the loan. *See* USAA FED. SAV. BANK, PILLAR 3 REGULATORY CAPITAL DISCLOSURES (2020).

103. Under USAA's policies, "[g]enerally, when loans become 90 days past due, they are placed in nonaccrual status. . . . [c]redit card and home equity accounts are charged off on the last day of the month in which the loan becomes 180 days past due. . . . [c]onsumer loans are charged off when the account becomes 120 days past due." *Id.*

104. Under USAA's policies, an unsecured bankrupt account is charged off after 50 days as to the bankruptcy debtor.

105. No definition of "charge off" applies to a current debt in which payments were made in full and on-time every payment period.

106. Plaintiff has never failed to meet monthly minimum payment requirements.

107. Plaintiff has never filed bankruptcy.

108. Plaintiff's Loans should not have been "charged off" by USAA.

109. Equifax did not properly report the Loans as "charged off."

110. Despite Plaintiff providing proof of payments to Equifax, Equifax continued to inaccurately report the Loans as "charged off" on Plaintiff's Credit Report.

111. After two formal disputes with Equifax, Plaintiff's Credit Report still shows these two major inaccuracies.

112. The payments on the Loans should be reported as current on Plaintiff's Credit Report.

113. The Plaintiff's Credit Report is patently incorrect and is misleading.

114. The incorrect information in her Credit Report has had an adverse effect on Plaintiff's credit score, mental health, ability to get a loan with optimum terms, resulted in a higher down payment being required on her Car Loan, delayed her home purchase, and endangered her employment status as an Investigative Specialist for the FBI.

115. Plaintiff is unable to plead with specificity the Defendant Equifax's failure to follow reasonable procedures to assure maximum possible accuracy because she is unaware of Defendant' Equifax's internal procedures and will request the same through the discovery process.

116. Courts have permitted plaintiffs to proceed to discovery when they can plead only general allegations about the defendant's internal procedures. *See, e.g.*, *Burns v. Trans Union, LLC*, No. 4:18-03120-MGL, 2019 U.S. Dist. LEXIS 139613, at *9 (D.S.C. Aug. 19, 2019) (citing *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018)) ("As a consumer, [plaintiff] is unable to plead [defendant consumer reporting agency]'s specific errors during their internal investigation without discovery.").

117. Equifax failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's Credit Report.

118. The continued reporting of the Loans as "charged off" and for non-payment when Plaintiff has provided the Monthly Statements to demonstrate she was current on the Loans shows that Equifax has not followed reasonable procedures to assure maximum possible accuracy.

119. "[A] consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 415 (4th Cir. 2001).

120. Under the FCRA, a defendant's actions in "reckless disregard of a requirement of FCRA" qualifies as a willful violation under 15 U.S.C. § 1681n(a). *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

121. In Plaintiff's First and Second Disputes of her Credit Report, Equifax willfully, or with reckless disregard of its obligations, failed to follow reasonable procedures to assure maximum possible accuracy.

122. Each of Equifax's actions were willful or conducted with reckless disregard of its obligations under the FCRA.

123. The misreporting of the Loans as "charged off" and for non-payment on Plaintiff's Credit Report was willful or committed with reckless disregard of its obligations under the FCRA.

124. The misreporting of the Loans as "charged off" on the First Response was willful or committed with reckless disregard of its obligations under the FCRA.

125.     Defendant Equifax's misreporting of the Loans for non-payment on the Second Response was willful or committed with reckless disregard of its obligations under the FCRA.

126.     Defendant Equifax's willful or reckless failure to follow reasonable procedures directly and proximately caused Plaintiff to receive an inaccurate credit score.

127.     Defendant Equifax's willful or reckless failure to follow reasonable procedures directly and proximately caused Plaintiff to incur attorney's fees with respect to her Credit Report.

128.     Defendant Equifax's willful or reckless failure to follow reasonable procedures directly and proximately caused Plaintiff to take time out of her workday while making repeated calls to USAA, drafting and filing two formal disputes with Equifax about the status of the Loans, and meeting with an attorney to discuss options due to the misrepresentation.

129.     Defendant Equifax's willful or reckless failure to follow reasonable procedures directly and proximately caused Plaintiff emotional distress during the closing on her mortgage loan, delayed her new home purchase, and threatened to cause an increase in her interest rate on said loan.

130.     Defendant Equifax's willful or reckless failure to follow reasonable procedures directly and proximately jeopardized and continues to jeopardize her employment status with the FBI.

131.     Defendant Equifax's willful or reckless failure to follow reasonable procedures directly and proximately jeopardized and continues to jeopardize her level of security clearance with the FBI.

132.     Defendant Equifax's willful or reckless failure to follow reasonable procedures could directly and proximately impede her ability to obtain credit, to obtain credit at a proper rate of interest, to open bank accounts, enter into rental agreements, obtain utility services, obtain homeowner's insurance at a competitive rate, obtain auto owner's insurance at a competitive rate, and potentially deter any entities from which she may seek employment.

133.     Defendant Equifax's willful or reckless failure to follow reasonable procedures directly and proximately caused Plaintiff to pay an additional $3,800.00 down payment in order to obtain her Car Loan.

134.     Plaintiff experienced disturbed sleep, increased blood pressure, headaches, depression, embarrassment, gastric distress, teeth grinding, weakened immune system, mood swings, increased fatigue, and anxiety as a direct and proximate result of Equifax's actions.

135.     Plaintiff suffered significant embarrassment when Defendant Equifax's failure to follow reasonable procedures caused her lender to require an additional $3,800.00 down payment for her Car Loan because she has a demonstrated history of creditworthiness and takes pride in the knowledge that she consistently pays bills on time or early.

136.     As a result of Defendant Equifax's failure to follow reasonable procedures, Plaintiff suffered and continues to suffer ongoing stress about explaining her credit history during her annual Financial Disclosure and 5-Year Reinvestigation as required by her employment with the FBI.

137.     As a result of Defendant Equifax's failure to follow reasonable procedures, Plaintiff suffered and continues to suffer considerable stress and anxiety about the possible impact that her credit score may have on her security clearance.

138.     Plaintiff suffered actual damages from the Defendant Equifax's violations of 15 U.S.C. § 1681e(b) including but not limited to a higher loan down payment, emotional distress, and attorney's fees.

139.     Alternative to Plaintiff's actual damages, 15 U.S.C. § 1681n(a)(1)(A) permits statutory damages of "not less than $100 and not more than $1,000" for a defendant's willful or reckless failure to comply with FCRA requirements.

140.     As a result of Defendant Equifax's actions, Equifax is liable to Plaintiff for costs, attorney's fees, and either: actual or statutory damages under 15 U.S.C. § 1681n(a).

141.     As a result of Defendant Equifax's actions, Equifax is liable to Plaintiff for punitive damages under 15 U.S.C. § 1681n(a)(2).

142.     In the alternative, Defendant Equifax was negligent in its violations of 15 U.S.C. § 1681e(b) and is liable to Plaintiff for actual damages, costs, and attorney's fees under 15 U.S.C. § 1681o(a).

## COUNT TWO
## VIOLATION OF 15 U.S.C. § 1681s-2(b)

143.     The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

144.     Furnishers of information under the FCRA receive notice from the consumer reporting agency when a consumer has initiated a dispute and reinvestigation of information in a consumer's file.  15 U.S.C. § 1681i(a)(2).

145.     Once a furnisher receives notice of a dispute under 15 U.S.C. § 1681i(a)(2), it must conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b).

146.     Under 15 U.S.C. § 1681s-2(b)(1), a furnisher must "(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to 15 U.S.C. § 1681i(a)(2); (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete . . . for purposes of reporting to a consumer reporting agency only, as

appropriate, based on the results of the reinvestigation promptly: (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information."

147.   "[C]onsumers can . . . bring private suits for violations of § 1681s-2(b)." *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 148 (4th Cir. 2008).

148.   "[A] private right of action exists under Section 1681s-2(b) if furnishing organizations fail to investigate disputed credit information after two events have occurred: (1) a consumer has filed a dispute with the consumer reporting agency; and (2) the consumer reporting agency notified the creditor or the creditor's agent about the dispute." *McLaughlin v. Nationstar Mortg. LLC*, No. 1:18-CV-593, 2018 U.S. Dist. LEXIS 155039, at *11 (M.D.N.C. Sept. 12, 2018).

149.   "Section 1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a *reasonable* investigation of their records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432 (4th Cir. 2004).

150.   Upon information and belief, as a furnisher of information under the FCRA, USAA received notice of each of Plaintiff's First and Second Disputes.

151.   As a furnisher under the FCRA, notice of a dispute triggered USAA's duties under 15 U.S.C. § 1681s-2(b).

152.   Under the FCRA, USAA had a duty to conduct a reasonable investigation and correct any inaccurate information reported to Equifax for both the First and Second Dispute.

153.   Plaintiff's Credit Report showed a major inaccuracy before the First Formal Dispute by reporting the Loans as "charged off."

154.   Plaintiff's Credit Report showed a major inaccuracy before the Second Form Dispute by reporting the Loans as having three months with no payments made by Plaintiff.

155.   Although Spouse received a bankruptcy discharge of his personal obligation on the Loans, Plaintiff continued to owe on the Loans.

156.   Plaintiff has continued to make full, timely payments on the Loans and therefore is not in default.

157.   Under USAA's own policies, the Loans should not have been "charged off" because Plaintiff was never in default on the Loans and never filed for bankruptcy relief.

158.   Each of Plaintiff's disputes triggered a duty for USAA to conduct a reasonable investigation about the disputed information, modify any inaccurate information, and report the results of the investigation to Equifax.

159.   After the First Dispute, Defendant USAA willfully, or with reckless disregard for its obligations under the FCRA, failed to correct the inaccurate "charged off" status of the Loans.

160.    After the Second Dispute, Defendant USAA willfully, or with reckless disregard for its obligations under the FCRA, failed to correct the inaccurate report that Plaintiff made no payments during the months of June, July, and August of 2020.

161.    Defendant USAA's willful or reckless failure to correct the inaccurate report that Plaintiff made no payments during the months of June, July, and August of 2020, directly and proximately caused Plaintiff to receive an inaccurate credit score after a formal dispute.

162.    Defendant USAA's willful or reckless failure to correct the inaccurate report that Plaintiff made no payments during the months of June, July, and August of 2020, directly and proximately caused Plaintiff to incur attorney's fees with respect to her Credit Report.

163.    Defendant USAA's willful or reckless failure to correct the inaccurate report that Plaintiff made no payments during the months of June, July, and August of 2020, directly and proximately caused Plaintiff to take time out of her workday to make repeated calls to USAA and in drafting and filing the Second Dispute with Equifax about the status of the Loans.

164.    Defendant USAA's willful or reckless failure to correct the inaccurate report that Plaintiff made no payments for the months of June, July, and August of 2020, directly and proximately caused Plaintiff emotional distress over the closing on her home, her employment status with the FBI, and her ability to obtain credit at a proper rate of interest.

165.    Plaintiff experienced disturbed sleep, increased blood pressure, headaches, depression, embarrassment, gastric distress, teeth grinding, weakened immune system, mood swings, increased fatigue, and anxiety as a direct and proximate result of USAA's actions.

166.    Plaintiff suffered actual damages from the Defendant USAA's violations of 15 U.S.C. § 1681s-2(b) including but not limited to a higher loan down payment, emotional distress, and attorney's fees.

167.    Alternatively, 15 U.S.C. § 1681n(a)(1)(A) permits statutory damages of "not less than $100 and not more than $1,000" for a defendant's willful or reckless failure to comply with FCRA requirements.

168.    As a result of Defendant USAA's actions, USAA is liable to Plaintiff for costs, attorney's fees, and either: actual or statutory damages under 15 U.S.C. § 1681n(a).

169.    As a result of Defendant USAA's actions, USAA is liable to Plaintiff for punitive damages under 15 U.S.C. § 1681n(a)(2).

170.    In the alternative, Defendant USAA was negligent in its violations of 15 U.S.C. § 1681s-2(b) and is liable to Plaintiff for actual damages, costs, and attorney's fees under 15 U.S.C. § 1681o(a).

## COUNT THREE
## VIOLATION OF 15 U.S.C. § 1681i

171.    The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

172.    Equifax is a consumer reporting agency and subject to the requirements of 15 U.S.C. § 1681i.

173.    Under § 1681i(a)(1)(A), consumer reporting agencies must follow reinvestigation procedures "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute. . . ."

174.    "If, after any reinvestigation under [§ 1681i(a)(1)] of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete . . . the consumer reporting agency shall: (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation. . . ." 15 U.S.C. § 1681i(a)(5).

175.    Consumers may state a claim for private enforcement of § 1681i violations. *See Brown v. Equifax Inc.*, No. 5:19-CV-78-BO, 2019 U.S. Dist. LEXIS 69109 (E.D.N.C. Apr. 24, 2019).

176.    After Plaintiff's First Dispute, the First Response and credit report continued to display the Loans as "charged off."

177.    After Plaintiff's Second Dispute, the Second Response and credit report continued to display the Loans as having no payments in June, July, and August of 2020.

178.    Plaintiff has continued to make full, timely payments on the Loans each month.

179.    The Loans should be reported as "current" on Plaintiff's Credit Report.

180.    After the First Dispute, Defendant Equifax willfully, or with reckless disregard for its obligations under the FCRA, failed to correct the inaccurate "charged off" status of the Loans.

181.    After the Second Dispute, Defendant Equifax willfully, or with reckless disregard for its obligations under the FCRA, failed to correct the inaccurate non-payment status of the Loans.

182.    Defendant Equifax's willful or reckless failure to correct the inaccurate "charged off" status of the Loans directly and proximately caused Plaintiff to receive an inaccurate credit score after both formal disputes.

183.    Defendant Equifax's willful or reckless failure to correct the inaccurate "charged off" status of the Loans directly and proximately caused Plaintiff to incur attorney's fees with respect to her Credit Report.

184.    Defendant Equifax's willful or reckless failure to correct the inaccurate "charged off" status of the Loans directly and proximately caused Plaintiff to take time out of her workday

while making repeated calls to USAA and making a second formal dispute with Equifax about the status of the Loans.

185.     Defendant Equifax's willful or reckless failure to correct the inaccurate "charged off" status of the Loans directly and proximately caused Plaintiff emotional distress over the closing on her home, her employment status with the FBI, and her ability to obtain credit at a proper rate of interest.

186.     Plaintiff suffered actual damages from the Defendant Equifax's violations of 15 U.S.C. § 1681i including but not limited to a higher loan down payment, emotional distress, and attorney's fees.

187.     Alternatively, 15 U.S.C. § 1681n(a)(1)(A) permits statutory damages of "not less than $100 and not more than $1,000" for a defendant's willful or reckless failure to comply with FCRA requirements.

188.     As a result of Defendant Equifax's actions, Equifax is liable to Plaintiff for costs, attorney's fees, and either: actual or statutory damages under 15 U.S.C. § 1681n(a).

189.     As a result of Defendant Equifax's actions, Equifax is liable to Plaintiff for punitive damages under 15 U.S.C. § 1681n(a)(2).

190.     In the alternative, Defendant Equifax was negligent in its violations of 15 U.S.C. § 1681i and is liable to Plaintiff for actual damages, costs, and attorney's fees under 15 U.S.C. § 1681o(a).

## COUNT FOUR
## VIOLATION OF N.C. GEN. STAT. 75-54

191.     The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

192.     Under North Carolina law, plaintiffs must meet only three requirements to plead a claim for unfair debt collection practices: (1) the plaintiff must be a "consumer" within the meaning of the NCDCA; (2) the obligation or alleged obligation incurred must be a "debt" within the meaning of the NCDCA; and (3) the defendant must be a "debt collector" within the meaning of the NCDCA.  *See, e.g.*, *Davis Lake Comty. Ass'n v. Feldmann*, 530 S.E.2d 865, 868 (N.C. Ct. App. 2000).

193.     Under the NCDCA, a "'consumer' [is] any natural person who has incurred a debt or alleged debt for personal, family, [or] household . . . purposes." N.C. GEN. STAT. § 75-50(1).

194.     The Plaintiff incurred the Secured Loan and Unsecured Loan from USAA.

195.     As the Plaintiff incurred the Secured Loan and Unsecured Loan for personal, family, or household purposes, she is a "consumer" within the meaning of the NCDCA.

196.     Under the NCDCA, a "debt" is "any obligation . . . alleged to be owed or due from a consumer." N.C. GEN. STAT. § 75-50(2).

197.     The Secured Loan and Unsecured Loan are "debts" under the NCDCA.

198.     Defendant USAA has twice affirmed an incorrect status of the Loans, implying it is due different or additional payments on the Loans from the Plaintiff and that Plaintiff did not meet her obligations under the Loans.

199.     Under the NCDCA, a "debt collector" is "any person engaging, directly or indirectly, in debt collection from a consumer. N.C. GEN. STAT. § 75-50(3).

200.     Defendant USAA, through its repeated verification of incorrect information, is at least indirectly engaging to collect additional or different debts from Plaintiff.

201.     Defendant USAA is a "debt collector" within the meaning of the NCDCA.

202.     Under the NCDCA, "[n]o debt collector shall collect or attempt to collect or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation." N.C. GEN. STAT. § 75-54.

203.     The verification on the Plaintiff's credit report of the incorrect "charged off" status on the Loans is a, deceptive, or misleading representation of the Plaintiff's debt obligations.

204.     The Defendant USAA verified the incorrect "charged off" or non-payment status of each of the Loans in a deceptive or misleading manner in four distinct instances.

205.     The Defendant USAA verified the incorrect "charged off" or non-payment status of the Line of Credit after the First Dispute in a deceptive or misleading manner.

206.     The Defendant USAA verified the incorrect "charged off" status of the Secured Loan after the First Dispute in a deceptive or misleading manner.

207.     The Defendant USAA verified the incorrect non-payment status of the Line of Credit after the Second Dispute in a deceptive or misleading manner.

208.     The Defendant USAA verified the incorrect non-payment status of the Secured Loan after the Second Dispute in a deceptive or misleading manner.

209.     Plaintiff suffered actual damages including but not limited to a higher loan down payment, emotional distress, and attorney's fees as a direct and proximate cause of Defendant USAA's fraudulent, deceptive, or misleading representations.

210.     Under the NCDCA, "any debt collector who fails to comply with any provision of [the NCDCA] . . . is liable to such person in a private action in an amount equal to the sum of (i) any actual damage as a result of such failure; and (ii) civil penalties the court may allow" in an amount not less than $500.00 and not greater than $4,000.00. N.C. GEN. STAT. § 75-56(b).

211.     As a result of Defendant USAA's actions, USAA is liable to Plaintiff for actual damages, statutory damages, costs, and attorney's fees under N.C. GEN. STAT. § 75-56(b).

212.     As a result of Defendant USAA's actions, USAA is liable to Plaintiff for punitive damages under N.C. GEN. STAT. § 75-56.


WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Determine that the Defendant Equifax was in willful violation of 15 U.S.C. § 1681e(b) and allow Plaintiff to recover the greater of: actual damages incurred or to be incurred; or statutory damages of $1,000 as a consequence of Defendant Equifax's willful violations of FCRA, including but not limited to costs and attorney's fees under 15 U.S.C. § 1681n(a);

2.     Determine that the Defendant Equifax was in willful violation of 15 U.S.C. § 1681e(b) and allow Plaintiff to recover punitive damages under 15 U.S.C. § 1681n(a).

3.     In the alternative to ¶¶ 1–2, determine that Defendant Equifax was in negligent violation of 15 U.S.C. § 1681e(b) and allow Plaintiff to recover actual damages incurred or to be incurred as a consequence of Defendant Equifax's negligent violations of FCRA, including but not limited to costs and attorney's fees under 15 U.S.C. § 1681o(a);

4.     Determine that the Defendant USAA was in willful violation of 15 U.S.C. § 1681s-2(b) and allow Plaintiff to recover the greater of: actual damages incurred or to be incurred; or statutory damages of $1,000 as a consequence of Defendant USAA's willful violations of FCRA, including but not limited to costs and attorney's fees under 15 U.S.C. § 1681n(a);

5.     Determine that the Defendant USAA was in willful violation of 15 U.S.C. § 1681s-2(b) and allow Plaintiff to recover punitive damages under 15 U.S.C. § 1681n(a);

6.     In the alternative to ¶¶ 4–5, determine that Defendant USAA was in negligent violation of 15 U.S.C. § 1681s-2(b) and allow Plaintiff to recover actual damages incurred or to be incurred as a consequence of Defendant Equifax's negligent violations of FCRA, including but not limited to costs and attorney's fees under 15 U.S.C. § 1681o(a);

7.     Determine that the Defendant Equifax was in willful violation of 15 U.S.C. § 1681i and allow Plaintiff to recover the greater of: actual damages incurred or to be incurred; or statutory damages of $1,000 as a consequence of Defendant Equifax's willful violations of FCRA, including but not limited to costs and attorney's fees under 15 U.S.C. § 1681n(a);

8.     Determine that the Defendant Equifax was in willful violation of 15 U.S.C. § 1681i and allow Plaintiff to recover punitive damages under 15 U.S.C. § 1681n(a);

9.     In the alternative to ¶¶ 7–8, determine that Defendant Equifax was in negligent violation of 15 U.S.C. § 1681i and allow Plaintiff to recover actual damages incurred or to be incurred as a consequence of Defendant Equifax's negligent violations of FCRA, including but not limited to costs and attorney's fees under 15 U.S.C. § 1681o(a);

10.    Determine that the Defendant USAA was in violation of N.C. GEN. STAT. § 75-54 and allow Plaintiff to recover both actual damages incurred or to be incurred; and statutory damages of $4,000 for each violation of the NCDCA, including but not limited to costs and attorney's fees under N.C. GEN. STAT. § 75-56;

11. Determine that the Defendant USAA was in violation of N.C. GEN. STAT. § 75-54 and allow Plaintiff to recover punitive damages under N.C. GEN. STAT. § 75-56;

12.    Award such other and further relief as is just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

This the 12th day of October, 2021.

*/s/ Kristen S. Nardone*
KRISTEN S. NARDONE
NC Bar No. 28063
Attorney for Plaintiff

OF COUNSEL:

Nardone Law Firm
PO Box 1394
Concord, NC 28026-1394
(704) 784-9440
kristen@nardonelawfirm.com

IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| JENNIFER L. PATRICK, | ) | |
| | ) | Case No. 21-XXXX |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| UNITED SERVICES AUTOMOBILE | ) | |
| ASSOCIATION, and | ) | |
| EQUIFAX, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFICATION OF COMPLAINT

I, Jennifer L. Patrick, a Plaintiff in the above-captioned case, hereby state, under penalty of perjury, that to the best of my knowledge, I have reviewed the Verified Complaint attached hereto and that the same is true and accurate.

September **25**.

2021

_Jennifer L. Patrick_

JENNIFER L. PATRICK

Sworn to and subscribed before me, this the **25**th day of September 2021.

_Patel_

Signature of Notary Public

Commission expires: 11/08/2025

SHAILABEN PATEL
NOTARY
PUBLIC
CABARRUS COUNTY, NC

21